MILWAUKEE AREA RETAIL FOOD CLERKS'
PENSION PLAN
ADMINISTRATIVE SERVICE CONTRACT

This Contract has been entered into between the BOARD OF TRUSTEES OF THE MILWAUKEE AREA RETAIL FOOD CLERKS' PENSION PLAN (hereinafter referred to as the "Trustees") and KELLY & ASSOCIATES, INC., (hereinafter referred to as the "Company").

1. Nature of Contract.

1.1 The Trustees have elected to employ the Company to provide the Trustees with administrative services for the operation of the Plan.

1.2 The Company agrees to perform administrative services in accordance with the provisions of this Contract.

1.3 The Trustees agree to compensate the Company in accordance with the terms of this Contract for the performance of administrative services.

2. Term of Contract. This Contract shall become effective as of the 1st day of August, 1981 and shall remain in full force and effect until August 1, 1982. Thereafter, the Trustees may terminate this Contract on the first day of any month following 30 days' written notice to the Company, and the Company may terminate this Contract on the first day of any month following 90 days' written notice to the Trustees.

3. Administrative Services. The Company shall perform the following administrative services:

3.1 Furnish, staff and maintain an office in the metropolitan Milwaukee area at a location acceptable to the Trustees with facilities and personnel adequate to perform administrative duties and to answer inquiries of employees, employers, unions and the Trustees. The office shall be open daily, Monday through Friday, except holidays, during normal working hours.

3.2 Furnish all necessary telephone service, office equipment, data processing, postage, office supplies and printing, except as otherwise provided herein.


EXHIBIT 1

3.3 Maintain all files and official documents relating to the Plan, including, but not limited to, trust agreements, Plan documents and rules, correspondence, Internal Revenue Service filings and Department of Labor and Pension Benefit Guaranty Corporation reports, pension applications, reciprocity agreements, employer participation agreements and collective bargaining agreements between participating unions and employers.

3.4 Submit reasonable reports regarding the administrative services of the Plan as may be requested by the Trustees, including without limitation, monthly and cumulative income and expense and other financial statements, monthly contributions received reports, pension application reports and delinquent employer reports. Each month's statement of receipts and disbursements shall be available for review by the Trustees no later than 45 days following the end of such month.

3.5 Maintain all records and data required for purposes of compliance with the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").

3.6 Upon request of the Trustees, a representative of the Company will attend the Trustees' meetings, which number approximately four per year. Prepare and mail notices and agendas for Trustees' meetings. Assist in arranging the facilities for such meetings and accommodations for those attending the meetings. Travel expenses incurred by the Company in connection with attendance at Trustees' meetings shall be at the Company's expense.

3.7 Arrange for the design, printing, distribution and maintenance of forms and other written materials such as stationery, letterheads and envelopes which are necessary for the administration of the Plan to be printed at the Company's expense. The Company shall also arrange for benefit booklets, summary annual reports, individual benefit statements and other mass mailing materials to be printed at the expense of the Plan.

3.8 Advise and assist in preparing summary plan descriptions and summaries of material modifications. Prepare summary annual reports for the Plan.

3.9 Respond to all oral and written inquiries from employers, unions or employees with regard to the administrative services of the Plan. Distribute printed Plan materials to employees, beneficiaries, employers and unions on request. The Company shall be responsible for furnishing, in a timely manner, to participants, beneficiaries, government agencies and others, reports and information with respect to the Plan required by applicable law, provided that the Company shall be reimbursed by the Plan for any printing or mailing costs incurred in a mass mailing to all participants, beneficiaries or employers.

3.10 Establish and maintain general ledgers reflecting all receipts and disbursements of the Plan, and a proper accounting system to record the financial activity of the Plan. The financial records of the Plan shall at all times be the property of the Trustees.

3.11 Prepare and maintain all necessary records to permit the Plan's auditor to certify the annual financial statements of the Plan. Cooperate with the Plan's attorney and auditor in the preparation of all necessary annual reports, including without limitation tax exemption returns, tax returns, reports and benefits descriptions required to be completed by the Plan pursuant to state or federal laws. Cooperate with and assist the Plan's auditor in conducting employer payroll audits.

3.12 Furnish the Plan's actuary with census information, annually if necessary, as may be required for the preparation of the actuary's valuation of the Plan. Assist the actuary and local unions in the collection of all necessary employee data from new participating employers with respect to the preparation of an actuarial valuation of the new employer.

3.13 Prepare and deliver each month to each contributing employer not providing their own statement an imprinted statement which shall list the name and Social Security number of all employees paid for by that employer for the preceding month. This list will be used by the employer as the basis for making his current payment to the Plan. Maintain information on date of original contribution and date of eligibility for pension benefits of each employee.

3.14  Receive employer contribution reports from depository bank, maintain proper records concerning employer contributions, verify the accuracy of contributions and reports, maintain bank accounts for the Plan, deposit funds with the depository bank in accordance with the instructions of the Trustees and supply proper notices to contributing employers of underpayments and overpayments in accordance with the instructions of the Trustees.  Prepare, circulate for signature and process all Plan disbursements.

3.15  Advise the Trustees and local unions, in accordance with the procedures established by the Trustees, of the failure of any employers to file reports required of them or of any employer delinquency with respect to contributions.  Notify delinquent employers of the delinquency in accordance with the rules and procedures adopted by the Trustees.  Beyond notification letters, the Company is not required to enforce payment of contributions by employers.

3.16  Maintain a current master listing of all employers participating in the Plan.  Maintain a complete file for each employer including a historical record of the reports filed, the total number of hours reported, the number of employees and the amount contributed each month and year to date.

3.17  Establish and maintain complete and accurate records necessary for proper administration of the Plan regarding employee eligibility for benefits, and, upon request of the Trustees, supply a list of employees eligible for and receiving pension benefits in a form approved by the Trustees.

3.18  Distribute booklets and beneficiary designation cards to eligible employees.

3.19  Complete Schedule SSA to Form 5500 and send notices to terminated employees concerning pension rights.

3.20  Establish and maintain complete and accurate data processing and other records regarding employee vesting service and benefit credit.  Collect the necessary documents from employers, unions and the Social Security Administration, supporting and establishing entitlement to

-4-

vesting service and benefit credit.  Record the hours reported for each employee by month as well as by year.

       3.21  Respond to all oral and written inquiries from current and former participants with regard to eligibility for and calculation of accrued benefits.  Receive and process all applications for pension benefits.  Forward pension application forms with instructions to applying employees.  Review pension applications, employment history, evidence of age and other factors affecting qualification for and amount of a pension benefit.  Interview applicants if necessary to verify or obtain information.  Obtain information from other sources if necessary to determine eligibility for or amount of a pension.

       3.22  Administer reciprocity agreements with other plans.

       3.23  Process name changes, changes in beneficiaries and similar matters.  Receive, maintain and request beneficiary designation cards from employees.

       3.24  Advise employees on status of payment and appeal rights when a claim for a pension is denied or submitted to the Trustees for a decision, in accordance with rules adopted by the Trustees.

       3.25  Coordinate arrangements for Trustee attendance at educational seminars.

       3.26  Compute and pay premiums on behalf of the Plan and Trustees for all insurance contracts maintained by the Trustees.

       3.27  Maintain a fidelity bond covering all of the employees of the Company who are involved, directly or indirectly, in the administration of the Plan in an amount not less than $100,000.

    4.     Fees.

       4.1  Following the close of each calendar month, the Company shall prepare and submit to the Trustees an invoice for the preceding month which shall indicate the

number of covered employees for whom a contribution was made for the previous month.

4.2 The fee to be paid by the Trustees to the Company per month per employee for whom a contribution is made shall be $.47. This rate shall continue in effect until at least August 1, 1982. The Company does further agree that, if there are no substantive changes in administrative duties, this fee shall not be increased for the second year of this Contract by a percentage greater than the percentage increase in the Consumer Price Index for the period August 1, 1981 through July 31, 1982.

4.3 The Company or its designee shall have the right to examine all records of the Plan in order to determine the correct amount of fees to be paid to the Company under this Contract. The Trustees or their designee shall have the right to examine records maintained by the Company to determine the correct amount of fees that have been paid or are to be paid to the Company under this Contract.

4.4 The following services and items are not provided by the Company under this Contract:

(a) Consulting services nor payment of consulting fees;

(b) Legal services nor payment of legal fees;

(c) Audit services nor payment of audit fees;

(d) Actuarial services nor payment of actuarial fees;

(e) Investment services nor payment of investment fees;

(f) Preparation of and printing of the Plan's legal documents, the pension plan and trust agreement;

(g) Trustees' expenses;

(h) Trustees' bond or errors and omissions policies;

(i) Travel expenses incurred by the Company on Plan business; or

(j) The cost of postage and printing for special mass mailings, such as summary annual reports, to employers or employees.

5. Ownership of Records and Documents.

5.1 The Company agrees that all books, records, forms, instruction manuals, lists of names, plates, seals, passbooks, journals, ledgers and all other recorded information necessary or desirable in connection with the administration of the Plan shall always be and remain the property of the Trustees and shall be delivered to the full Board of Trustees upon demand.

5.2 All information, materials or records stored in data processing media pertaining to the Plan, including, but not limited to, source documents and data files are the property of the Trustees. In the event of termination of administrative services, the Company agrees to make available to the Trustees or their designee, at no additional cost to the Plan, all services necessary for an orderly transfer of such information, including but not limited to assisting the Trustees or their designee in identifying, understanding and decoding said information.

5.3 The Trustees agree that the Company is the owner of the following materials and the Trustees have only such rights to their use following termination of this Contract as provided herein, unless such materials were prepared at the expense of the Trustees or the Plan:

(a) Pension processing and payment manuals; provided, however, that the Company shall allow the Trustees or their designee sufficient access to such manuals as may be required to make possible the preparation of replacement manuals that will insure consistency in the Plan's pension processing and payment procedures before and after the termination; and

(b) Computer programs and data processing systems that are not specifically designed by the Company for the Plan.

5.4 The Company will present to the Trustees or their designee all records and documents owned by the Trustees within 30 days after termination of administrative services.

6. <u>Accuracy</u>. The Company will provide administrative functions necessary for the performance of this Contract. It is recognized that errors may occur and it is agreed that the Company will not be held liable for such errors where it can be demonstrated that the Company exercised reasonable and due care and that it followed generally accepted practices utilized by firms or organizations which provide administrative services to employee benefit plans.

7. <u>Force Majeure</u>. The Company shall not be liable for any delay in, or failure of, performance of any covenants contained herein nor shall any such delay in, or failure of, performance constitute default hereunder, or give rise to any liability for damages, if, and only to the extent that, such delay or failure is caused by force majeure. As used herein, the term "force majeure" means fire, explosions, action of the elements, strikes or other differences with workmen (lasting no longer than 30 days), restrictions or restraints imposed by law, rule, regulation or order of public authority, whether federal, state or local, and whether civil or military, acts of military authority, interruption of transportation facilities and any other cause which is beyond the reasonable control of the Company and which by the exercise of reasonable diligence the Company is unable to prevent. The existence of such causes of such delay or failure shall extend the term of performance on the part of the Company thereby to such extent as may be necessary to enable it to complete performance in the exercise of reasonable diligence after the causes of delay or failure have been removed.

8. <u>Performance</u>.

8.1 No waiver of any default in performance on the part of the Company or like waiver by the Plan, of any breach or a series of breaches, of any of the terms,

covenants or conditions of this Contract shall constitute a waiver of any subsequent breach or a waiver of said terms, covenants or conditions. Resort to any remedies referred to herein shall not be construed as a waiver of any other rights and remedies to which the Company is entitled under this Contract or otherwise. The Company may not assign this agreement or its interest hereunder without the express written approval of the Trustees in advance.

       8.2  Should any part of this Contract for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Contract had been executed with the invalid portion thereof eliminated.

       8.3  This Contract embodies the entire Contract and understanding of the parties and supersedes all prior oral and written communications between them. The terms hereof may be modified only by a writing signed by both parties hereto. This Contract is for the sole benefit of the Trustees and the Company and shall not be construed as granting any rights in favor of any other persons.

       9.  <u>Notice</u>.  Any notice required or permitted to be given hereunder shall be in writing and shall be served upon the other party personally, or by certified mail, postage prepaid, return receipt requested, unless otherwise provided herein. Any notice to the Company shall be addressed to it c/o Robert E. Kelly, Jr., President; Kelly & Associates, Inc., 303 East Ohio Street, Suite 2600, Chicago, Illinois 60611. Any notice to the Plan shall be addressed to it c/o Thomas E. Funk, Esq., 111 East Wisconsin Avenue, Suite 1800, Milwaukee, Wisconsin 53202 and to the Chairman of the Trustees at his business address. Either party may designate another address at any time by appropriate written notice to the other.

       10.  <u>Authority of Trustees to Execute Contract</u>. If this Contract is executed by fewer than all of the Trustees of the Plan, the undersigned signatory Trustees warrant that they are authorized to enter into this Contract on behalf of all Trustees of the Plan and to bind the Plan to the terms hereof.

This Contract shall be to the benefit of, and shall be binding upon, the Company and its successors and the Trustees and their successors.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be signed and executed by their authorized representatives as of August 1, 1981.

        KELLY & ASSOCIATES, INC.

        BY_____
          Robert E. Kelly, Jr., President

        BOARD OF TRUSTEES
        MILWAUKEE AREA RETAIL FOOD
         CLERKS' PENSION PLAN

        BY_____
            Chairman

        BY_____
            Secretary